UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Applicant,<br><br>  v.<br><br>MICHELLE DAGMAR FIORE AND VENTANAS CAPITAL, LLC,<br><br>  Respondents. | Miscellaneous Business Docket No. |

**DECLARATION OF WILLIAM J. DONAHUE IN SUPPORT OF SECURITIES AND EXCHANGE COMMISSION'S APPLICATION FOR AN ORDER <u>TO COMPLY WITH ADMINISTRATIVE SUPBOENA</u>**

I, William J. Donahue, pursuant to 28 U.S.C. § 1746, do hereby declare as follows:

1. I am an attorney and a member in good standing of the bar of the Commonwealth of Massachusetts. I am an attorney in the Enforcement Division in the Boston Regional Office of the U.S. Securities and Exchange Commission ("Commission"). I am participating in a Commission investigation entitled, *In the Matter of Trading in the Securities of Loop Industries, Inc.* (B-03368). I make this declaration in support of the Commission's Application for an Order to Comply with Administrative Subpoena.

2. This declaration is based upon information that the Commission staff has obtained from various sources described more fully below, during the course of the Commission investigation into the potential sale of unregistered securities by individuals and entities and/or individuals and entities affiliated with Loop Industries, Inc., and alleged fraudulent representations about those securities.

1

The Commission Investigation

3. On October 21, 2019, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Formal Order") in an investigation entitled, *In the Matter of Trading in the Securities of Loop Industries, Inc.* (B-03368). Among other things, the Formal Order directed that an investigation be undertaken to determine whether certain persons or entities had violated Sections 5(a), 5(c), or 17(a) of the Securities Act of 1933 ("Securities Act"), Sections 15(a), or 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder and/or Sections 203, 206(1) and 206(2) of the Advisers Act in connection with trading in the securities of Loop Industries, Inc. ("Loop"). The Formal Order designated certain officers of the Commission as having power to subpoena witnesses for documents and testimony, including William Donahue. Because the Formal Order is a confidential document concerning a non-public investigation of the Commission, it is not attached to this declaration, but will be provided upon the request of the Court for *in camera* review.

4. Staff in the Commission's Division of Enforcement are investigating possible fraud in connection with the sale of Loop's securities, as well as potential violations of the securities registration requirements and the broker registration requirements.

5. Loop Industries, Inc., is a Nevada corporation headquartered in Quebec, Canada whose shares are traded on the NASDAQ Global Market exchange under the symbol LOOP. Loop describes itself as a plastics recycling company whose proprietary technology focuses on depolymerizing no and low-value waste polyethylene terephthalate ("PET") plastic and polyester fiber, including plastic bottles and packaging, carpets and textiles of any color, transparency or

condition, to their base level monomers. According to the company, Loop filters the monomers to create PET resin that is purportedly suitable for use in food-grade packaging and polyester fiber. A copy of a recent Loop press release is attached describing Loop's background in "About Loop Industries" is attached hereto as Exhibit A. *See also*,

https://www.loopindustries.com/en/technology

6. Loop's shares originally came into the market through a reverse merger with a shell company known as First American Group (symbol: FAMG). FAMG filed a Form 8-A12G in July 2012 registering its common stock under Section 12(g) of the Exchange Act. A copy of FAMG's Form 8-A For Registration of Certain Classes of Securities is attached hereto as Exhibit B. However, FAMG never had any operations before merging with Loop in June 2015.

7. Among other things, the staff is reviewing whether undisclosed individuals and entities affiliated with Loop engaged in a fraudulent scheme of acquiring and selling Loop's shares in violation of the securities laws.

8. The entities and individuals are believed to have acquired ownership of the majority of publicly available shares of Loop around the time of Loop's reverse merger with FAMG in June 2015. Among other things, the staff is investigating whether upon acquiring the publicly available shares, the affiliated individuals and/or entities took steps to conceal their ownership of the shares and control of the company, including through the use of nominee entities, with the purpose of selling their shares in violation of the securities laws.

9. Ventanas Capital, LLC was formed as a limited liability company in Nevada in February of 2014. Fiore is identified in corporate filings as the sole member of the LLC. A copy of Ventanas Capital's business information from the Nevada Secretary of State's website is attached hereto as Exhibit C.

10. The staff has developed evidence that between October 2015 and March 2016, Ventanas received transfers of unrestricted Loop stock totaling approximately 1.5 million shares from nominee entities in return for little or no apparent consideration. An excerpt of Transfer Agent records involving Ventanas' acquisition of Loop shares are attached hereto as Exhibit D.

11. While Fiore is not believed to have any direct relationship with Loop, the staff has learned that Fiore has a close connection to Donald Danks, a former board director of Loop from June 2015 to June 2018. In May 2017, Ventanas, through Fiore, granted Danks a limited power of attorney ("LPOA") over one of Ventanas' brokerage accounts which held the Loop stock. Danks held the LPOA over the account until early September 2017. In one of the questions on the LPOA application, Danks was asked if he was a director or a publicly held company, to which he falsely stated that he was not. A redacted copy of the Danks LPOA application is attached hereto as Exhibit E. While having LPOA over the account, Danks and Ventanas sold approximately $90,000 of Loop stock into the market. Redacted copies of Ventanas' brokerage account statements for the period May 2017 through September 2017 are attached hereto as Exhibit F.

12. In September 2017, Danks' LPOA was revoked. However, the staff has developed evidence that even after Ventanas removed Danks' LPOA in September 2017, Internet Protocol address data confirm that Danks continued to access the Ventanas brokerage account until February 2019. During that period the Ventanas brokerage account continued to sell significant quantities of Loop stock into the market.

13. Section 16(a) of the Exchange Act, among other things, requires each officer and director of an issuer to initially declare their beneficial ownership and subsequently report changes in ownership of the issuer's securities. In particular, through the Commission's Form 4,

officers and directors are required to report sales of the issuer's securities. During the period May through September 2017, Danks failed to file any Form 4 identifying the sales of Loop stock through the Ventanas brokerage account to which he held LPOA.

14. The staff sought Fiore's testimony, as well as documents from Ventanas, in order to explore more fully the interaction and relation among Fiore, Ventanas and Danks.

<u>The Commission's Subpoena to Fiore</u>

15. The Commission served Fiore in hand with a subpoena for testimony and a subpoena to Ventanas for documents on May 19, 2022. Fiore, as the sole managing member of Ventanas was ordered to produce documents on June 1, 2022, and appear for testimony virtually through Webex video conference on the same day. A copy of the subpoenas and proof of service are attached hereto, as Exhibit G.

16. The in-hand service of the subpoenas followed a prior attempt on April 22, 2022, in which the Commission served the testimony and documents subpoena to Fiore by way of First Class mail to a prior address and by way of email to her last known email address. On May 10, 2022, the staff contacted Fiore by telephone and attempted to confirm Fiore received the subpoenas and intended to comply. However, in reaching Fiore on her mobile telephone number, Fiore replied, "not interested" and then hung up. Further attempts to reach Fiore were unsuccessful. On one occasion the staff left a voice mail with contact information, but received no call back. A further attempt to reach Fiore at her mobile number resulted in a message indicating that Fiore's voice mail box was full and could not take additional messages.

17. On June 1, 2022 at 1:45 pm EDT, the staff dialed into the Webex video conference call. Fiore did not appear on the call. At 2:05 pm, in the presence of a court

reporter, the staff went on the record and noted Fiore's failure to appear. A copy of the testimony transcript is attached hereto as Exhibit H. In addition, Fiore and/or Ventanas failed to provide any response or produce any documents responsive to the documents subpoena.

18. On June 14, 2022, I received a call from a person identifying himself as "Dave Johnson" on behalf of Fiore. He claimed to be a friend of Fiore's and was calling from the mobile telephone number in which the staff had attempted to contact Fiore previously. The caller claimed that Fiore knew that the Commission was attempting to contact her and that she asked him to let me know that she would be getting back in touch with the Commission, but that Fiore was allegedly at an inpatient medical facility and could not respond at that time. However, in the weeks that have passed, neither Fiore nor her friend have followed up with the Commission staff. The staff made additional attempts to reach Fiore at her mobile number, however, Fiore failed to answer the call and her voice message box was full and could not accept messages.

Executed this 28th day of July 2022, in Boston, Massachusetts.

*Wm. J Donahue*
_____
William J. Donahue